**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **WILMER ALEXSANDER CARBAJAL MERCADO,**<br><br>**Petitioner,**<br>**v.**<br><br>**JASON KNIGHT, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; RYAN ARBON, Weber County Sheriff; DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, United States Attorney General,**<br><br>**Respondents.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Civil Case No. 1:26-CV-175-DAK-PK**<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Judge Paul Kohler** |

This matter is before the court on Petitioner Wilmer Alexsander Carbajal Mercado's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1]. Pursuant to 28 U.S.C. § 2243, the court issued an Order to Show cause to Respondents to show cause why Petitioner's Petition for Writ of Habeas Corpus should not be granted and to identify the legal authority under which they purport to detain Petitioner. Respondents filed a response and Petitioner filed a reply in support of his Petition. The court considers the matter fully briefed and issues the following Memorandum Decision and Order granting the Petition.

## BACKGROUND

Petitioner is a Honduran national seeking asylum in the United States with his family. On March 12, 2023, together with his wife and two children, Petitioner used the CBP One mobile app to schedule an appointment for admission at the Camino Real Port of Entry, Bridge 2, in Eagle Pass, Texas. The family expressed a fear of return to Honduras. United States Customs and Border Protection ("CBP") processed them together under a single family unit number and recorded Petitioner as "FATHER."

Petitioner was briefly taken into custody pursuant to 8 U.S.C. § 1225(b)(2)(A) while undergoing a secondary inspection. In December of 2018, Petitioner had previously crossed into the United States illegally. On March 12, 2019, an Immigration Judge ordered his removal from the United States. He was removed from the United States to Honduras on April 1, 2019, under A-number 201 433 549. CBP was aware of this prior violation.

CBP paroled Petitioner and his family into the United States that same day. CBP stated: "Subjects were processed for NTAs and paroled into the U.S. for one year pending 240 hearings." CBP did not reinstate the 2019 removal order. CBP issued a Notice to Appear, placing Petitioner and his family in removal proceedings under Section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a. The Notice to Appear designates him as "an arriving alien," alleges that he "applied for admission at the Camino Real Port of Entry Bridge 2 in Eagle Pass, Texas, and expressed credible fear if returned to Honduras," and charges his as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). The Notice to Appear set his first hearing for May 28, 2025, more than a year after the parole period it just fixed would end. Immigration Judges have exclusive jurisdiction over asylum applications filed by aliens who have been served a Notice to Appear. 8 C.F.R. § 1208.2(b).

Petitioner and his wife filed their applications for asylum on March 8, 2024, within one year of arrival. 8 U.S.C. § 1158(a)(2)(B). Both applications describe the same factual claim for asylum in this country: Petitioner's wife had a furniture-cover business in Honduras receiving extortion threats that had escalated to armed death threats against her and her family, the business collapsed, and the family had no income to pay the ever-increasing alleged debt. On May 27, 2025, the Immigration Judge vacated Petitioner's hearing set for the next day because counsel had appeared and set filing deadlines in a single order captioned with Petitioner's wife, Ms. Perez Ortiz, as lead respondent and the two children and Petitioner as riders. On June 24, 2025, counsel filed joint written pleadings for the family, in which Petitioner admitted the Notice to Appear's allegations and prior removal.

Although the parole time originally set has expired, Petitioner and his family have a pending application for asylum. Petitioner also has work authorization and a Utah driver license issued as REAL ID compliant. DHS's REAL ID regulations treat a person "who has a pending application for asylum in the United States" as having "lawful status." 6 C.F.R. § 37.3. The regulations permit a state to issue a compliant license only on satisfactory evidence of lawful status, verified through DHS's SAVE system when the documents are DHS-issued.

On September 30, 2026, Petitioner was driving to work just after 7 a.m. with two coworkers when they were stopped by ICE vehicles. The officers asked for his identification and ordered him to get out of the car, stating that he was being detained. He was not given a reason for the stop. But the Form I-213 completed in relation to the stop states that the stop was based on records showing that the vehicle was registered to "an individual with no legal immigration status and a prior removal." Although the Form I-213 states that "an I-200 (Warrant of Arrest for

Alien) was generated," ICE did not show Petitioner a warrant, and Respondents have not produced an I-200 Warrant in these proceedings.

The ICE officers did not provide Petitioner with any additional explanation or notice for the detention beyond the prior 2019 removal order, which CBP affirmatively chose not to reinstate when Petitioner was paroled with his family in 2023. The Form I-213 acknowledges that he has "work authorization and pending I-589" for asylum. The Form I-213 erroneously states that Petitioner entered "without inspection" and at a place "not designated as a port of entry," even though CBP records clearly show that he entered in March 2023 with inspection at a designated port of entry after making an appointment on CBP One. The Form I-213 then erroneously states that "ORTUNO stated this is his second entry into the United States," while the rest of the Form I-213 refers correctly to CARBAJAL. It appears, therefore, that this entire section with misstated facts applies to an unrelated case for someone named ORTUNO.

ICE officers took Petitioner to their Ogden office for processing and then to Weber County Jail. At 11:05 a.m. on September 30, 2026, a Supervisory Detention and Deportation Officer with ICE issued a Form I-286, Notice of Custody Determination, stating that "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act" Petitioner would be detained by DHS. Designation of his detention as arising under section 236 rests on the Form I-213's mischaracterization of his 2023 entry as an entry without inspection. The record, however, is clear that he entered with inspection and was paroled.

Although the Form I-286 for his detention invokes section 236, Respondents have not released Petitioner on bond or conditional parole and have not identified any change in his circumstances since his 2023 parole. Respondents have not processed Petitioner in accordance

with 8 C.F.R. § 212.5(e)(2), which governs parole that has expired or parole terminated on notice.

The Form I-213 also stated that Petitioner "was processed as a change of venue and will be held in ICE custody pending a hearing." But no motion to sever was filed in the family's asylum proceeding. By virtue of their detention of Petitioner, DHS changed the venue of his case from the Immigration Court's non-detained docket to the Immigration Court's detained docket. Every notice issued since the arrest has been captioned under "LEAD FILE: 201-433-549," which is Petitioner's own file from his previous removal, and it lists no riders for his family. Petitioner's individual hearing is set for December 1, 2026. On October 7, 2026, his request for a custody redetermination was withdrawn without prejudice.

Before his detention, Petitioner worked full time in construction, earning between $36,000 and $40,000 a year. He and his family lived on that income. Petitioner's wife has not worked since she became pregnant with their third child in 2023.

**ANALYSIS**

Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Respondents contend that this matter is not subject to judicial review because Petitioner raises claims that are within the Attorney General's discretion. 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii). But Petitioner is not asking the court to reweigh a discretionary judgment about flight risk or danger. Petitioner is challenging whether Respondents have any lawful

authority to hold him and on what terms. Section 1226(e) does not bar a challenge to "the statutory framework that permits [the noncitizen's] detention without bail." *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Section 1252(a)(2)(B)(ii) reaches only decisions the statute itself commits to discretion. *Kucana v. Holder*, 558 U.S. 233, 237 (2010). Respondents acknowledge that Petitioner does not directly challenge the manner of termination of his parole. Whether the expiration of a parole period authorizes mandatory detention 934 days after the parole period expires is a question of law. *See Vargas Rodriguez v. Leyva,* No. 1:26-cv-00132-JNP, 2026 WL 2797321, *3 (D. Utah Sept. 18, 2026). The court concludes that it has jurisdiction to address the issues Petitioner raises.

Respondents argue that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A). But Petitioner contends this section does not apply to him because he is not "an alien seeking admission" at the border and his Petition should be reviewed under § 1226(a). "Courts in this district, this circuit, and across the country have been asked to weigh in the same or similar factual settings in this area of the law." *Sananes Hernandez v. Leyva*, No. 4:26-cv-00054-DN, 2026 WL 1948965, *3 (D. Utah July 6, 2026). *Sananes Hernandez* recognized that the issue of "under which statute may a parolee be re-detained following the termination of parole" has not been decided by the Tenth Circuit. *Id. Sananes Hernandez*, however, is currently pending before the Tenth Circuit.

Section 1225(b)(2)(A) mandates detention of "an alien seeking admission." Discretionary parole, like Petitioner and his family received at the border, is an exception to the general rule calling for mandatory detention of arriving noncitizens placed in removal proceedings. DHS is authorized to parole individuals into the United States "temporarily." 8 U.S.C. § 1182(d)(5)(A). Parole can be terminated through automatic expiration or terminated by written notice. In this

case, Petitioner's granted parole expired March 11, 2024. He did not receive notice of his parole being terminated.

Once parole is terminated, the former parolee is "restored to the status that he or she had at the time of parole." 8 C.F.R. .§ 212.5(e)(2)(i). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Respondent argues that once Petitioner's parole expired, he reverted to an arriving alien as when he first entered the country. But in *Vargas Rodriguez*, the court found that the respondent's claim that the petitioner was an "arriving alien" was "incorrect" because "the term 'arriving alien' is not used in the mandatory detention provisions of § 1225." 2026 WL 2797321, at *5. In addition, the Tenth Circuit has held that "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026).

Other courts have found that Section 1225 "appear[s] to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306-07 (E.D.N.Y. 2025). "Applying the plain meaning of 'arriving in the Untied States' here, there can be no doubt that upon his parole into the interior of the country, [Petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States." *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025).

The *Vargas Rodriguez* court recognized that several courts have noted that "Section 1225(b)(1) is titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 2026 WL 2797321, at *5 (citing 8 U.S.C. § 1225(b)(1)). Therefore, these court decisions track the statutory context as well. The court agrees with these courts that regardless of the language used in some regulations, the statutory language in § 1225(b)(2)(A) does not apply to Petitioner and his family who were paroled at the border. As found by the Tenth Circuit, "is likewise limited to the border." *Santillan Quiroz*, 180 F.4th at 1239.

Courts have also analyzed § 1182(d)(5)(A)'s language that the noncitizen "shall forthwith return or be returned to the custody from which he was paroled," and made a distinction between the terms "custody" used in the statute and the term "status" used in the regulations. 8 U.S.C. § 1182(d)(5)(A). "Courts have explained that custody and detention are distinct concepts, though they may in certain contexts be synonymous." *Vargas Rodriguez*, 2026 WL 2797321, at *5. In *Vargas Rodriguez*, the court "declined to read custody as used in § 1182 to necessarily mean physical detention, especially because the Supreme Court stated that this section does not 'affirmatively authoriz[e] detention, much less indefinite detention." *Id.* at *6 citation omitted). "'The statute does not require the Court to pretend that [Petitioner] was never paroled and permitted to live freely in this country. . . . [T]hey remain a [non-citizen] living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.* (quoting *Qasemi*, 2025 WL 3654098, at *11).

Therefore, Petitioner falls under the discretionary detention framework of § 1226(a). Even if the court were to consider the terms custody and detention to be synonymous in this context, Respondents did not return Petitioner to detention "forthwith" as the statute provides.

petitioner and his family have lived in the country and had a pending asylum petition for three-and-a-half years. He has worked in Utah with a work permit and was allowed a CLEAR ID by DHS. DHS has known where Petitioner was the entire time he and his family have been in the country. They have been actively participating in their asylum proceedings.

Judge Nuffer found detention thirteen months after parole expired too long to comply with the "forthwith" requirement. *Sananes Hernandez*, 2026 WL 1948965, at *7 ([T]he legal fiction that an alien already present within the United States is still considered to be knocking at the gates must end if the alien is not forthwith returned to the custody from which the alien was paroled."). He also stated that "[h]undreds of district courts have rejected the 'entry fiction' narrative" that Respondents rely on from *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958). *Sananes Hernandez*, 2026 WL 1948965, at *9.

Respondents rely heavily on another case from this district, *Uribe Blanco v. Leyva*, No. 4:26-cv-00058-AMA (D. Utah June 16, 2026), but that case is factually distinguishable. The former parolee in that case was arrested 25 days after his parole expired and his petition agreed that Respondents had authority to arrest and detain him under § 1225(b). *Uribe Blanco*, ECF No. 11, slip op. at 2, 11. The court had no occasion to consider whether "forthwith" places any temporal limit on the fiction, and it did not. In contrast, the arrest in this case was far from forthwith, 934 days after Petitioner's parole expired.

Moreover, § 1182(d)(5)A) directs a return to custody when the purposes of such parole "have been served." Respondents argue that the parole's purpose was not to facilitate the complete adjudication of the family's asylum claim, but to incentivize noncitizens to use lawful and orderly means to enter the United States. Respondents cite to no record document for that proposition. The record document recording why CBP paroled this family states they were

"paroled into the U.S. for one year pending 240 hearings." The 240 hearings are still pending. There is nothing in the record stating that the purpose of this family's parole has been served.

The court concludes that Petitioner was improperly detained under § 1225(b) and that his detention is governed by § 1226(a). "After a noncitizen has undergone inspection, been granted parole, and physically enters the interior of the United States, they are no longer an applicant arriving at a port of entry. This means that the narrow procedural mechanisms of 8 U.S.C. § 1225(b)(2) no longer govern the noncitizen's custody or removal proceedings." *Sananes Hernandez v. Leyva*, 2026 WL 1948965, at *9.

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," but only when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). In this case, the Form I-286 refers to Section 236 because the Form I-213 states that Petitioner entered without inspection at a place not designated as a port of entry. Respondents now acknowledge that this is false. Respondents acknowledge that "ICE records showed that Mr. Carbajal was inspected and paroled at a port of entry on March 12, 2023."

Respondents claim that ICE issued the section 236 determination out of an abundance of caution and to lay the groundwork for Petitioner's detention under two alternate legal theories. However, this argument fails to acknowledge that the 236 determination was based on erroneous information. Moreover, Section 1226(a) requires a warrant. In this case, the Form I-213 states only that, after officers spotted the vehicle during surveillance, an I-200 "was generated." A Form I-200 "may be issued only by those immigration officers listed in § 287.5(e)(2). 8 C.F.R. § 236.1(b)(1). Although the I-213 states that a warrant was "generated," Respondents did not produce one even though Petitioner asked for it. Petitioner states that he was not given or shown

a warrant. The vague reference on the error-riddled I-213 is not sufficient for the court to conclude that a warrant was properly issued before Petitioner was detained. The I-213 does not state that a warrant was issued, it states only that it was generated. Generated could mean many things and not necessarily issued. Respondents have not produced a properly issued warrant despite being given an opportunity to do so. Respondents have also made no argument that Petitioner was at risk of escaping. DHS has had his address for the entire time he and his family have been in the country. On the record before the court, there is no evidence that a warrant was properly issued prior to Petitioner's detention.

Because § 1226(a) requires a warrant properly issued by the Attorney General or DHS, and Respondents have not provided proper evidence of a warrant in this case, immediate release is the appropriate remedy. Moreover, Respondents acknowledge that the information on the Form I-213 was erroneous, and Petitioner has proven the number of extensive errors contained in it. There is no evidence that any discretion was exercised under the proper § 1226(a) standards. The court concludes that Petitioner has met his burden of demonstrating that his detention was unlawful at its inception and it remains unlawful. There is no need to hold a bond hearing to consider whether continued custody is warranted. Such a bond hearing cannot validate an arrest made without authority or supply a determination that ICE never made.

Petitioner also makes a separate argument that his detention violated due process because he was not given a pre-deprivation hearing. He does not claim a right to be granted extended parole. But as a person allowed to live in this country, he claims a liberty interest in not being imprisoned without due process. Noncitizens "who have established connections in this country have due process rights in deportation proceedings." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (distinguishing admission at the border from noncitizens with

connections in the country). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

In *Vargas Rodriguez* and *Sananes Hernandez*, Judge Parrish and Judge Nuffer, respectively, thoroughly analyzed similar due process claims under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluded that the lack of a pre-detention hearing before detaining petitioners deprived the petitioners of their due process rights. *Vargas Rodriguez*, 2026 WL 2797321, at *7-8; *Sananes Hernandez*, 2026 WL 1948965, at *10-11. The court agrees with their analyses and concludes, in this case, that Petitioner's due process rights were similarly violated by the lack of a pre-detention hearing.

"Upon a finding of constitutional violation, a district court may grant a writ of habeas corpus and 'dispose of the matter as law and justice so require.'" *Sananes Hernandez*, 2026 WL 1948965, at *12 (citing 28 U.S.C. §§ 2241(a), 2243. The court finds that the appropriate remedy in this case is immediate release. If Respondents seek to re-detain him, they must provide him with all applicable procedural protections, including notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that there has been a material change in circumstances and that Petitioner is a flight risk or a danger to the community.

**CONCLUSION AND ORDER**

Based on the above reasoning, the court GRANTS Mr. Carbajal's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 [ECF No. 1] and ORDERS as follows:

1. Respondents shall release Mr. Carbajal immediately, on the same conditions that applied before his September 30, 2026 detention, and he shall remain released during

the pendency of his removal proceedings, including his application for asylum. Release shall be as soon as practicable and without undue delay. Respondents shall provide the court with a status report confirming his release within 48 hours of the date of this Order.

2. Respondents shall not re-detain Mr. Carbajal under 8 U.S.C. § 1225(b). And future detention must comply with 8 U.S.C. § 1226(a) and must be preceded by notice and a hearing before an immigration judge at which the government bears the burden of establishing, by clear and convincing evidence, that there has been a material change in circumstances and that he is a flight risk or a danger to the community.
3. Respondents shall not impose restraints on Petitioner's liberty, such as electronic monitoring, that were not in place before his 2026 detention, absent a determination at such hearing that they are necessary to prevent flight from proceedings.
4. Respondents shall, within seven days of release, file in the immigration court whatever motion is necessary to return Mr. Carbajal's case to the non-detained docket and to his prior status as a rider on his family's asylum proceedings with his wife as lead, A201-433-551. Respondents shall file a copy of such filing with this Court.
5. Respondents shall return Mr. Carbajal's personal effects and identity documents to him at the time of his release.
6. The court's October 1, 2026 Order barring transfer and removal shall remain in effect until Mr. Carbajal is released.

DATED this 23rd day of November 2026.

BY THE COURT:

Dale A. Kimball

DALE A. KIMBALL, U.S. DISTRICT JUDGE